## AGREEMENT

THIS AGREEMENT ('Agreement') is made the 13th day of February, 2018 by Seller and Buyer, as set forth herein by and consented to by JZA IRREVOCABLE TRUST, the legal owner of ABC CAPITAL REALTY, L.L.C., a Pennsylvania Irrevocable Trust and Pennsylvania Limited Liability Company, respectively (collectively 'Seller') and BURTON REALTY COMPANY d/b/a ANCHOR REALTY NORTHEAST, a Pennsylvania Corporation ('Buyer') and its principals signing below.

WHEREAS, Seller owns ABC Capital Realty, L.L.C., an operating property management business in the Commonwealth of Pennsylvania; and

WHEREAS, Seller holds contractual rights to act as a Property Management Company pursuant to assignable contracts with owners of residential real estate in the City and County of Philadelphia; and

WHEREAS, Seller desires to irrevocably assign all rights, title and interest in the aforesaid contracts on the terms and conditions set forth herein and below.

NOW THEREFORE, in consideration of the mutual undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereto, intending to be legally bound hereby, with the following recitals incorporated herein, agree as follows:

1. Property. ABC Capital Realty shall assign, and Buyer shall accept such assignments of those listed properties and parcels of real estate as submitted by ABC to Buyer. ABC shall provide Buyer with copies of all management agreements, and leases, and upon delivery Buyer shall be deemed to have accepted said irrevocable assignment, unless provided otherwise herein. Delivery of all documents hereunder, and any other notices required under this Agreement, shall be by email or Federal Express, to the designated individuals and addresses set forth below the signature page, and deemed delivered upon sending. Said assignments shall be in blocks of 100 and then 200. All payments due upon the delivery of the first two blocks of 300 shall be due and payable by Buyer to Seller or Seller's assignee or designee: interest only for 12 months, accruing interest at 10% per annum, compounded monthly, with the remainder due in a final balloon payment. All future and subsequent assignments shall bear the same terms if external financing is not available. Upon any payment default, Buyer, as defined above and below by the signature blocks, does hereby empower any attorney of any court of record within the United States to appear for Seller or Seller's successors and assigns and, with or without declaration filed, confess a non-dischargeable judgment for all amounts owed in favor of Seller or Seller's successors and assigns. No single exercise of the foregoing warrants and powers of attorney shall have been deemed to exhaust such warrants and powers, whether or not such exercise shall be held by any court to be invalid, voidable or void, but the warrants and powers shall continue undiminished and may be exercised from time to time as often as Landlord shall elect upon the occurrence of events of default. Buyer and its principals, by signing below,

1 | Page

acknowledge that they have read the aforesaid confession of judgment and that it has been agreed to knowingly, willfully and voluntarily, to secure any payment or payout due hereunder, and intend to be bound by the same, and further acknowledges that any and all successors or assigns of Buyer as defined herein shall be fully appraised of these provisions, and shall be bound by the same provisions and provide such agreements to Seller in writing. Seller may also file a UCC against Buyer to further secure all payments due hereunder.

2. Purchase Price and Payment Obligation of Buyer. Upon the Assignments contemplated herein, time being of the essence, ABC Capital Realty shall first assign 100 contracts, then 200 contracts, and Buyer shall render payment to ABC Capital Realty or its designee by notice by wire or certified funds within 30 days of the second assignment without any right of set-off, pursuant to the terms in paragraph one above. The payment shall be calculated as 2.45 multiplied by the gross annual commission or management fee set forth in the assigned contracts by ABC. Thereafter, Seller shall assign additional contracts to Buyer and the payment obligation of Buyer shall be due upon assignment or within 24 hours thereafter, to the designated payee of Seller pursuant to the aforesaid formula to calculate the payment. It is anticipated and understood by all Parties that the total number of contracts to be assigned is 1,200. After the initial 1,200 assignments, Seller shall have no further obligation to assign any additional contracts, with the following limited exception: If during the first eight (8) months of this Agreement, any such contract is terminated by the property owner after the assignment, Seller shall be required to provide a substitute contract with a term equal to the remaining term on the cancelled contract. Any further term, shall require an additional payment as calculated above to Seller under the same terms and conditions as set forth above. Only upon payment pursuant hereto, Seller shall then pay Buyer any water bill fee, pro-rated, billed and collected related to any assigned contracts, and at time of assignment, all property owners security deposits shall be paid over to Buyer, unless held by ~~Seller, not the~~ property owner~~, which shall not be due until 10 days after payment pursuant to the terms and conditions herein and above.~~

3. Closing. As this Agreement is drafted, closing shall have been deemed to transpire and at the time this Agreement is fully executed and the first Assignment made pursuant hereto.

4. Assumption of Liabilities. Buyer is not assuming any of the Seller's liabilities other than the ordinary contractual obligations of the assigned contracts pursuant hereto, including but not limited to the following:

    a. Any liability for the indebtedness of the Seller, whether individually, collectively, to banks, financial institutions, or other persons or entities claiming indebtedness against the Seller;

2 | Page

    b. Any liability for salaries, wages, bonuses, vacation pay, wage related compensation regarding employees of Seller, unless Buyer agrees to employ, and Seller consents to said Employment of such Employee. Within the first 90 days, at Buyer's request and Seller's consent, Seller shall permit Buyer to employ any of Seller's current employees.

    c. Any claims against or liabilities of Seller, arising out of or related to the operation or conduct of Seller's business, excluding management duties pursuant to the Assigned Contract, unless such claim has been previously asserted. Seller also shall not assign any contracts where Seller has received notice of or is aware of any such claim.

    d. By virtue of the specific enumeration of the foregoing, any other liabilities of Seller, individually or collectively, unless stated herein to the contrary.

    e. Nothing herein shall indemnify or preclude the Buyer from sole liability and claims from their rendered management services post assignments by Seller.

5. **Sellers's Representations and Warranties.** In connection with Buyer entering into this Agreement, Seller hereby covenants, represents and warrants and acknowledges that Buyer is relying upon the following:

    a. Sellers are duly organized corporate, trust and business entities and have the requisite power and authority to own, assign and carry on the business that is being assigned hereunder.

    b. Sellers have the full power and authority and have taken all necessary actions to authorize the execution of this Agreement and any assignments pursuant hereto.

    c. Unless otherwise provide in writing herein, Seller has full and complete authority to assign all of the contracts contemplated herein.

    d. Upon each assignment, the contracts shall be conveyed free and clear of all liens, encumbrances and Buyer will acquire clear and marketable title to the same and there are no obligations not cancellable by the Seller that would otherwise interfere with the same.

    e. Seller is not a contributor, nor does Seller maintain or ever maintained anything within the 1974 ERISA Statute, and there are no such obligations of any kind.

    f. Seller shall not and will not assign any contracts that are subject to any outstanding Order, Writ, agency, arbitration, lawsuit, motion or otherwise to the

best of Sellers knowledge, information and belief that would in any way affect item 'd' above, or otherwise, including violations of any federal, state, county or municipal statutes, ordinances or regulations.

g. Seller shall be liable for all liability, compensation, claims, or otherwise for any contracts prior to Assignment hereunder, not Buyer.

h. To the best of Sellers knowledge, information and belief, Seller has complied with and provided all required or requested due diligence without any untrue statement of material fact, or in any misleading manner.

i. Seller shall not now or in the future contract for any debt or liability whatsoever for which Buyer may become liable.

6. Buyers Warranties and Covenants:

   a. Buyer has secured or has ample assets to fulfill its financial terms hereunder.

   b. By entering into this Agreement, Buyer has not defaulted in the breach of any other Agreement to which Buyer is bound.

   c. Buyer warrants that they are experts in property management in Philadelphia, that they shall be responsible for all management services in all assigned contracts upon said assignment, that they enter into this Agreement with Seller with a mutual duty of good faith and fair dealing.

   d. That they recognize that should they fail to fulfill their obligations hereunder regarding management, payment, nor shall they disparage Seller in any way, that will be deemed a material default and any payment or pay-out due to Seller or Seller's designee or assignee hereinafter shall be immediately due and payable as per the terms set forth above, and Buyer shall be liable for all legal fees and costs to enforce any payment obligations and shall have no right of set-off.

   e. Buyer understands that Seller shall continue in the property management business after execution hereof, however, after assignment, Buyer and Seller mutually warrant to each other that they shall not interfere with one another or the entities so assigned.

7. Miscellaneous:

   a. Subject to the conditions above and other thereto, Buyer and Sellers indemnify one another from any intentional misrepresentation, omission, breach of

warranty prior to closing, including reasonable attorney's fees and expenses, or for any violation of any of the aforesaid covenants in paragraph 6 or 7, or Buyer's payment obligations due hereunder. Both parties warrant this is a commercial transaction made in Philadelphia, Pennsylvania.

    b. Subsequent to assignment, Seller shall be responsible for any 'turnovers' which shall consist of any repairs or renovations required to issue new Philadelphia Rental Licenses for each assignment. Buyer, however, shall be solely responsible for any and all eviction proceedings against tenants or for any day to day management obligations of the property subject to the assignment.

    c. Notices – By Federal Express and Email to Seller: Jay Walsh 1218 North Marshall Street, Philadelphia, PA 19122 and email:jay@abccapitalinvestments.com; By Federal Express and Email to Seller attention Michael Dvorkin and Walter Lapidus, Burton Realty/Anchor Realty NE, 2200 Michener Street, Suite 9, Philadelphia, PA 19115 and email: michael@anchorrealtypa.com. Either party may send notice of updated address or email as per above.

    d. Expenses – Buyer and Seller shall bear their own Counsel Fees and expenses in fulfilling this Agreement. Each party hereto shall bear all fees and expenses incurred by such party in connection with, relating to or arising out of the negotiation, execution and delivery of this Agreement, including, without limitation, attorneys', accountants' and other professional fees and expenses.

8. Waiver: The failure in any one or more instances of a party to insist upon performance of any of the terms, covenants or conditions of this Agreement, to exercise any right or privilege in this Agreement conferred, or the waiver by said party of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred. No waiver shall be effective unless in writing and signed by an authorized representative of the waiving party.

9. Severability. The invalidity or unenforceability of any provision of this Agreement or portion of a provision shall not affect the validity or enforceability of any other provision of this Agreement or the remaining portion of the applicable provision.

10. Governing Law. This Agreement shall be governed and controlled by the internal laws of the Commonwealth of Pennsylvania without regard to the principles or rules of the conflicts of law thereof and was made in the City and County of Philadelphia.

11. <u>Binding Effect; Benefit</u>. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their respective representatives, successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer on any person other than the parties hereto, and their representatives, successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, including, without limitation, third party beneficiary rights. All signatories below shall be jointly and severally liable for all payments due hereunder without any right of set-off.

12. <u>Assignability</u>. This Agreement shall not be assignable by either party without the prior written consent of the other party, except that Buyer has the right to assign this Agreement at Closing to an entity formed by Buyer and this shall not apply to the JZA Irrevocable Trust or prohibit Seller from assignment all proceeds related to this Agreement to said entity, or other designated entity at Seller's discretion.

13. <u>Amendments</u>. This Agreement shall not be modified or amended except pursuant to an instrument in writing (not an email) executed and delivered on behalf of each of the parties hereto.

14. <u>Jurisdiction and Venue</u>. The parties hereby consent to the exclusive jurisdiction of the Court of Common Pleas of Philadelphia County, Pennsylvania.

15. <u>Entire Agreement</u>. With the exception of the individual management contracts, which will be deemed to be incorporated herein and made a part hereof, this Agreement sets forth all of the premises, covenants, agreements and conditions between the parties hereto with respect of the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral, written or otherwise, except as set forth herein.

16. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and it shall not be necessary, in making proof of this Agreement to produce or account for more than one counterpart.

17. <u>Right to Independent Counsel.</u> Parties to this Agreement recognize that this Agreement is a legal document that may affect them adversely. The parties acknowledge that prior to executing this Agreement, they were given the opportunity to seek independent legal counsel regarding this Agreement. By executing this Agreement, the parties acknowledge that they have reviewed this Agreement with independent legal counsel or have knowingly waived their opportunity to do so. The Parties further warrant to their Counsel that they are sophisticated business people and understand all rights and risks herein.

18. <u>No Construction Against Drafter</u>. This Agreement has been fully negotiated and neither this Agreement or any provision hereof shall be construed against the party who drafted this Agreement or on whose behalf the Agreement was drafted.

IN WITNESS WHEREOF, the individual parties hereto have hereunto set their hand and seals the day and year first above written. Copies of signatures are legally binding.

**SELLER: ABC CAPITAL REALTY, LLC**

BY: _____     _____
                                                                          [Witness]

**BUYER: BURTON REALTY CO, INC d/b/a ANCHOR REALTY, NE**

BY: _____     _____
                                                                          [Witness]

_____
MICHAEL DVORKIN: as only to payment obligations and related security and confession provisions set forth herein, and warranting they are ~~a licensed realtor and~~ a principal in Burton Realty Co, Inc. d/b/a Anchor Realty, NE

_____
WALTER LAPIDUS: as only to payment obligations and related security and confession provisions set forth herein, and warranting they are a licensed realtor and a principal in Burton Realty Co, Inc. d/b/a Anchor Realty, NE

**JZA IRREVOCABLE TRUST:**

_____
Trustee, affirming consent only as to Seller